Isabella McCahill, as Administratrix of the Estate of John McCahill, Deceased, Respondent, *v.* New York Transportation Company, Appellant.

Negligence — proximate cause of death of injured person — where person injured by negligence of defendant's servant, in management of taxicab, dies of delirium tremens precipitated or hastened by his injuries, the negligence of defendant is proximate cause of decedent's death.

A negligent person is responsible for the direct effects of his acts, even if more serious, in cases of the sick and infirm as well as in those of healthy and robust people, nor can one who has negligently forwarded a diseased condition and thereby hastened and prematurely caused death escape responsibility even though the disease probably would have resulted in death at a later time without his agency. The acceleration of death causes death according to both the civil and the criminal law.

Plaintiff's intestate, who was severely injured by a taxicab under circumstances justifying the finding that the defendant was guilty of and plaintiff's intestate free from negligence, died the second day thereafter of delirium tremens. A physician testified, "I should say with reasonable certainty the injury precipitated his attack of delirium tremens, and understand I mean precipitated, not induced;" and again in his opinion, "the injury to the leg and the knee hurried up the delirium tremens." He also stated: "He might have had it (delirium tremens) anyway. Nobody can tell that." *Held,* that defendant's negligence was the proximate cause of the death.

*McCahill* v. *N. Y. Transportation Co.*, 135 App. Div. 322, affirmed.

(Argued February 16, 1911; decided March 14, 1911.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 20, 1909, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Theodore A. Lord* and *Arthur K. Wing* for appellant. It is undisputed that the decedent's death was not caused by the injuries sustained in the accident, but was caused by delirium

tremens due to excessive drinking, and it was, therefore, error to submit the case to the jury. (*Seifert* v. *B. H. R. R. Co.*, 169 N. Y. 254; *Hoey* v. *M. St. Ry. Co.*, 70 App. Div. 63; *McQuade* v. *M. St. Ry. Co.*, 84 App. Div. 637; *Koch* v. *Zimmerman*, 85 App. Div. 370; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Pollett* v. *Long*, 56 N. Y. 100; *Marimone* v. *D. D., etc., R. R. Co.*, 58 App. Div. 383; *Schoen* v. *D. D., etc., R. R. Co.*, 9 N. Y. Supp. 709.)

*G. Washbourne Smith* for respondent. The evidence was sufficient to justify the jury in finding that the deceased died from his injuries. (*Bruss* v. *M. R. Co.*, 66 App. Div. 554; *Turner* v. *N. El. R. R. Co.*, 41 App. Div. 213; *Hurley* v. *Brew. Co.*, 13 App. Div. 167; *Purcell* v. *Lauer*, 14 App. Div. 33; *Tice* v. *Munn*, 94 N. Y. 621; *Crank* v. *F. S. St., etc., Ry. Co.*, 53 Hun, 425; 127 N. Y. 648; *Ginna* v. *S. A. R. R.*, 8 Hun, 494; 67 N. Y. 596; *Gill* v. *R. & P. R. R. Co.*, 37 Hun, 107; *O. & M. R. R. Co.* v. *Hecht*, 115 Ind. 443; *Lapleine* v. *R. & S. Co.*, 40 La. Ann. 661; *Purcell* v. *St. P. C. Ry. Co.*, 48 Minn. 134; *L. & N. R. R. Co.* v. *Jones*, 83 Ala. 376; *M., etc., Ry. Co.* v. *Kellogg*, 94 U. S. 469; *Ins. Co.* v. *Boon*, 95 U. S. 117; *Seager* v. *Solvay P. Co.*, 129 App. Div. 813.)

Hiscock, J. One of the appellant's taxicabs struck respondent's intestate on Broadway, in the city of New York, in the night time under circumstances which, as detailed by the most favorable evidence, permitted the jury to find that the former was guilty of negligence and the latter free from contributory negligence. As a result of the accident the intestate was thrown about twenty feet, his thigh broken and his knee injured. He immediately became unconscious and was shortly removed to a hospital, where he died on the second day thereafter of delirium tremens. A physician testified that the patient when brought to the hospital " was unconscious or irrational rather than unconscious.   *   *   *   He rapidly developed delirium tremens.   *   *   *   I should say

with reasonable certainty the injury precipitated his attack of delirium tremens, and understand I mean precipitated, not induced ;" and, again, that in his opinion "the injury to the leg and the knee hurried up the delirium tremens." He also stated : "He might have had it (delirium tremens) anyway. Nobody can tell that." Of course, it is undisputed that the injuries could not have led to delirium tremens except for the pre-existing alcoholic condition of the intestate, and under these circumstances the debatable question in the case has been whether appellant's negligence was, legally speaking, the proximate cause of intestate's death. It seems to me that it was, and that the judgment should be affirmed.

In determining this question it will be unnecessary to quote definitions of proximate cause which might be useful in testing an obscure, involved or apparently distant relationship between an act and its alleged results, for the relationship here is perfectly simple and obvious. The appellant's automobile struck and injured the traveler ; the injuries precipitated, hastened and developed delirium tremens, and these caused death. There can be no doubt that the negligent act directly set in motion the sequence of events which caused death at the time it occurred. Closer analysis shows that the real proposition urged by the appellant is that it should not be held liable for the results which followed its negligence, either, *first*, because those results would not have occurred if intestate had been in a normal condition, or, *secondly*, because his alcoholism might have caused delirium tremens and death at a later date even though appellant had not injured him. This proposition cannot be maintained in either of its branches which are somewhat akin.

The principle has become familiar in many phases that a negligent person is responsible for the direct effects of his acts, even if more serious, in cases of the sick and infirm as well as in those of healthy and robust people, and its application to the present case is not made less certain because the facts are somewhat unusual and the intestate's prior disorder of a discreditable character. (*Tice* v. *Munn*, 94 N.Y. 621; *Crank* v.

*Forty-second Street, M. & St. N. Ave. Ry. Co.*, 53 Hun, 425;
affd., 127 N. Y. 648; *Allison* v. *C. & N. W. R. Co.*, 42 Iowa,
274; *Owens* v. *K. C., S. J. & C. B. Ry. Co.*, 95 Mo. 169, 182.)
The principle is also true although less familiar, that one who
has negligently forwarded a diseased condition and thereby
hastened and prematurely caused death cannot escape responsi-
bility even though the disease probably would have resulted
in death at a later time without his agency. It is easily seen
that the probability of later death from existing causes for
which a defendant was not responsible would probably be an
important element in fixing damages, but it is not a defense.

*Turner* v. *Nassau Electric R. R. Co.* (41 App. Div. 213)
was a case singularly similar to this one except that there the
physician ventured the opinion that delirium tremens would
not have ensued except for the accident resulting from
defendant's negligence, whereas in the present case there is
no opinion on this point. I think, however, that no pre-
sumption can be indulged in for the benefit of the present
appellant that delirium tremens would have occurred without
its agency. In that case a judgment in favor of the intes-
tate's representative was sustained on the ground that the
accident precipitated the delirium tremens which resulted in
the death.

In *Louisville & N. R. R. Co.* v. *Jones* (83 Ala. 376, 382) it
was said that if an intestate "had pneumonia or incipient
pneumonia at the time she received the injury, and it could
be known that she would ultimately die of that disease, this
would not necessarily, and as a matter of law, relieve the
railroad of all responsibility. If the injury was caused by
the negligence of the railroad company   *   *   *   and if
it contributed and hastened her death, then the corporation
would not be guiltless."

In *Jeffersonville, M. & I. R. R. Co.* v. *Riley* (39 Ind. 568) it
was said with reference to a request to charge made by the
defendant and denied: "If it was intended to have the court
say to the jury, that when a person has a tendency to insanity
or disease, and receives an injury which produces death, but

which would not have produced death in a well person (the plaintiff cannot recover) the charge was rightly refused. If death was the result of the pre-existing circumstances, and the injury had nothing to do with producing or accelerating the result, then the injury would not be the cause of death." (See, also, *Owens* v. *K. C., S. J. & C. B. Ry. Co.*, 95 Mo. 169, 182 ; *Foley* v. *Pioneer, M. & M. Co.*, 144 Ala. 178, 183.)

The responsibility of a person accelerating the death of another already suffering from a disorder which at a later period of itself might have caused death, has been considered in criminal cases and determined in a manner which is adverse to the contention of the appellant here.

In Hale's Pleas of the Crown (p. 428) the rule is laid down : " If a man be sick of some such disease, which possibly by course of nature would end his life in half a year, and another gives him a wound or hurt which hastens his end by irritating and provoking the disease to operate more violently or speedily, this hastening of his death sooner than it would have been is homicide or murder, as the case happens, in him, that gives the wound or hurt, for he doth not die simply *ex visitatione Dei,* but the hurt that he receives hastens it, and an offender of such a nature shall not apportion his own wrong." (See, also, Bishop on Criminal Law [5th ed.], § 637.)

In *Commonwealth* v. *Fox* (73 Mass. 585) the court stated the rule in connection with an indictment charging murder: " If the jury are satisfied on the evidence, that an assault and battery was committed on the deceased by the prisoner * * * and that thereby the death of his wife was hastened, so that it took place sooner by reason of the assault and battery than it would have occurred in consequence of her sickness alone," the indictment might be sustained.

In *State* v. *Smith* (73 Iowa, 32, 41) the court in a case of alleged murder expressed its opinion and decided as follows: " It surely ought not to be the law that because a person is afflicted with a mortal malady, from which he must soon die, whether his ailment be caused by natural or artificial causes, another may be excused for acts of violence which hasten or

contribute to or cause death sooner than it would otherwise occur." (See, also, *Rex* v. *Martin*, 5 C. & P. 128, 130; *Regina* v. *Plummer*, 1 C. & K. 600, 607.)

I think the judgment should be affirmed, with costs.

Vann, J. (concurring). I concur because so far as appears the decedent might be living yet if he had not been injured by the negligence of the defendant. He was forty-seven years old at the date of his death. For many years he had been steadily employed as hostler or coachman and for eleven years had not called a doctor or been sick except with a cold which did not keep him in bed. He had been married for twenty-three years and during that period had lived happily with his wife to whom he gave fourteen dollars from his wages every week. She testified that she had never seen him intoxicated or under the influence of liquor but that he usually drank a pint of beer at his dinner after he came home from work and that this was all of an intoxicating nature that she ever knew him to drink. He kept no liquor at home, did not have a red face, worked steadily and did not go out in the evening except with his wife or on business. Two witnesses who saw him frequently, one of whom had lived in the same house with him for five years immediately preceding his death, and the other who had known him well for more than twenty years, testified that they never saw him under the influence of liquor, though the latter said that he had sometimes taken a glass of beer with him but nothing else and never more than two glasses on the same occasion. A witness who saw the accident and picked him up swore that he was unconscious but not intoxicated and that he had "no smell of liquor on his breath."

The injuries were of a very serious nature and he died on the third day after he was hurt, but still the physicians who saw him at the hospital were of the opinion that he would have recovered if delirium tremens had not set in on the day following the accident. They testified in substance that he died from that disease, precipitated or hastened by the

injuries he had sustained.   One of them swore that he might have died from delirium tremens even if he had not been injured and the jury could have found from the evidence that he would not have had that disease at all but for the injuries. Hence they could properly find, as they are presumed to have found, that the injuries were a proximate cause of his death, because otherwise he would not have died when he did but might have lived for months or for years.   *Non constat,* he might be living still.   Even if he had the seeds of a fatal disease in his system yet would have continued to live for a longer or shorter period if he had not been injured, and the injuries caused the disease to develop prematurely and result in death sooner than it otherwise would, his death was caused by the accident within the meaning of the statute.   The acceleration of death causes death according to both the civil and the criminal law.   (*Clover, Clayton & Co.* v. *Hughes,* L. R. [App. Cas. 1910] 242 ; *Hopkins* v. *Comm.,* 80 S. W. Rep. 156 ; *Powell* v. *State,* 13 Tex. App. 244, 254 ; *Winter* v. *State,* 123 Ala. 1, 11 ; *Rogers* v. *State,* 60 Ark. 76, 79 ; *Baker* v. *State,* 30 Fla. 41, 71 ; *Rex* v. *Martin,* 5 C. & P. 128, 130 ; *Rex* v. *Webb,* 1 M. & Rob. 405 ; *People* v. *Moan,* 65 Cal. 532, 537 ; *State* v. *Morea,* 2 Ala. 275, 279.)

In *Clover, Clayton & Co.* v. *Hughes,* recently decided by the House of Lords, a workman suffering from serious aneurism, or abnormal dilitation of an artery, was engaged in tightening a nut when he fell dead from rupture of the aneurism, and it was held a death resulting from accident, because it was caused by a strain operating upon a condition of body which was such as to make the strain fatal.

In *People* v. *Moan* the court said : " If a patient is lying in the last stages of consumption, with a tenure upon life that cannot possibly continue for a day, it is homicide to administer a poison to him by which his life is ended almost immediately. So in the case we are now considering, if Finck, by excessive indulgence in intoxicating drinks, had reduced himself to a wreck and brought his life to the verge of the grave, it was a wrongful act for the defendant to accelerate his death by vio-

lence.   Perhaps blows delivered with equal force on the head of a strong man in the enjoyment of robust health, would not have been attended by any serious consequences; but upon a life impaired as Finck's was, by self-abuse, they may have accelerated his death; and but for the blows the man would not have died, at least not at the time he did.   This makes the defendant criminally responsible."

In *Rogers* v. *State* it was said: " If the last shot was not fired in necessary self-defense, and the wound inflicted by it either caused his death, or contributed to or hastened it, the defendant would be guilty of some degree of homicide, even though the first shot was fired in self-defense, and though, at the time the last shot was fired, the deceased was already so severely wounded that his death would have followed in a very short time."

In *State* v. *Morea* it was held "that if the death was accelerated by the violence of the prisoner, his guilt is not extenuated, although death might be, and probably would have been the result of the disease, which then afflicted the deceased."

The elementary writers, citing many authorities, lay down the rule as follows: " Though the person would have died from some other cause already operating, it is enough that the wound hastened the termination of life; as, for example, if he had already been mortally wounded by another.   And if the one attacked was enfeebled by disease, and what was done would not have been mortal to a well person, still, whether the assaulting person knew his condition or not, if he did what was mortal to the other, the offense is committed." (2 Bishop's Criminal Law, § 638.)

" So, if the deceased were ill of a disease apparently mortal, and his death were hastened by injuries maliciously inflicted by the prisoner, this proof will support an indictment against him for murder, for an offender shall not apportion his own wrong."   (3 Greenleaf on Evidence, § 139.)

" That the injury accelerated death is sufficient to cause criminal responsibility.   And the fact that the injury was such

that, if the person injured had been a person of robust health, it would not have been attended with serious consequences, does not affect the criminal responsibility.   Nor is it affected by the fact that the person inflicting the injury was ignorant of the physical condition of the person injured and of his inability to resist violence.   And it is inadmissible in a prosecution for homicide to prove that the injury inflicted by the accused would not have caused death had it not been for the physical condition of the deceased.   Nor is it material that the injuries inflicted merely hastened death."   (Wharton on Homicide [3rd ed.], § 34.)

A person with an incurable disease may be so injured as to aggravate the trouble and hasten it to a fatal result.   In such a case death is owing to two concurring causes, disease and violence, neither of which would have caused death when it occurred without aid from the other.   One cause may be more efficient than the other, yet unless acting alone it would have resulted in death, not in the future, but when death actually came, it is not of itself the proximate cause.   While in this case delirium tremens was not caused by the accident, it was set in motion by the accident and thus became an effective agency of death; the same as if the decedent had had heart disease, but would have continued to live a while longer had it not been set in motion and hurried to a fatal end by violence.

The judgment should be affirmed.

Gray and Collin, JJ., concur with Hiscock, J.; Cullen, Ch. J., and Werner, J., concur with Hiscock and Vann, JJ.; Haight, J., absent.

Judgment affirmed.