(159 App. Div. 268.)

COLEMAN v. RUGGLES-ROBINSON CO. et al.

(Supreme Court, Appellate Division, First Department. November 21, 1913.)

1. MASTER AND SERVANT (§ 252*)—NECESSITY OF EVIDENCE—ADMISSIONS.

In an employé's action for injuries under the Labor Law (Consol. Laws 1909, c. 31), where service of the statutory notice, a copy of which was attached to the complaint, was conceded by defendant and no exception taken to its form, the failure to formally offer the notice in evidence did not defeat a recovery; such failure not militating against any of defendant's rights, as it had the same opportunity to attack the sufficiency of the notice as if it had been offered in evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

2. DAMAGES (§ 185*) — ACTION FOR INJURIES — SUFFICIENCY OF EVIDENCE — CAUSE OF DEATH.

In an action for injuries to an employé who suffered a compound fracture of the skull and subsequently died of tuberculosis, where the medical testimony taken as a whole was to the effect that the blow and the subsequent operation necessitated thereby lowered deceased's vitality and decreased his powers of resistance so as to make him peculiarly susceptible to the tubercular germ, and that it was fairly to be inferred that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tuberculosis was the direct result of the injury, it sustained a verdict for plaintiff.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 503–508; Dec. Dig. § 185.*]

3. MASTER AND SERVANT (§ 121*)—LIABILITY FOR INJURIES—STATUTORY PROVISIONS.

Under Labor Law (Consol. Laws 1909, c. 31) § 18, providing that a person employing or directing another to perform labor of any kind shall not furnish, erect, or cause to be erected for the performance thereof scaffolds, hoists, etc., which are unsafe, unsuitable, or improper, and which are not so "constructed, placed or operated" as to give proper protection to the life and limb of a person so employed, and section 202, providing that an employé by entering upon or continuing in the service of the employer shall be presumed to have assented to the necessary risks of the occupation or employment and no others, and that the necessary risks shall be considered as including those only inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employés and has complied with the law for their greater safety, it was the duty of an employer engaged in the erecting of a building, which had constructed a hoist therein, to guard such hoist so as to afford reasonable protection from falling objects to an employé, required, in the performance of his duty, to go upon such hoist; the safety of the hoist not being tested by its own intrinsic sufficiency, but also with reference to the conditions under which it was used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

Ingraham, P. J., and Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by Catherine Coleman, as administratrix of Patrick Coleman, deceased, against the Ruggles-Robinson Company and another. The complaint was dismissed as to the defendant Thomas & Buckley Operating Company, and judgment rendered for plaintiff for $10,061.08 against the defendant named, and from the judgment and an order denying a new trial, such defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

John Vernou Bouvier, Jr., of New York City (W. Montague Geer, Jr., of New York City, on the brief), for appellant.

Edwin D. Webb, of New York City, for respondent.

HOTCHKISS, J. The action was brought under the Labor Law (Consol. Laws 1909, c. 31). The appellant was the general contractor for the erection of a high building of steel construction, and the plaintiff's intestate was a workman in its employ. For the use of itself and its subcontractors indiscriminately, as their needs might require, defendant had installed a double hod hoist to hoist building material to the various floors. These hoists were bought from and installed by a responsible concern who made a specialty of such work, and were of a type in common use. Each hoist consisted of an open platform with a vertical post on either of those of its two sides which were at right angles to its front and back. At about the height of a man's head, these posts were connected by a crossbar, to which was attached the cable by which the hoist was raised and lowered. Each hoist was open

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

144 N.Y.S.—18

on all sides, and wholly unprotected from objects falling from above. The hoists ran back to back in an open shaft, which extended from the basement to the top of the building, and was intended ultimately for use as the elevator shaft of the completed building. The superficial area of the platforms of the two hoists was considerably less than that of the square of the shaft, so that the hoists did not "fit" the shaft, and there was a space of from 18 to 30 inches between the exterior edges of three sides of each of the platforms and the corresponding sides of the shaft. The hoists were placed back to back, and between the two was a space of about 18 inches. All of these open spaces were large enough to admit objects of considerable size, which, falling from above, might strike the unprotected platforms of the hoists, if the latter happened to be below.

On November 14, 1910, the deceased while unloading material from one of these hoists at the third floor, a task to which he had been put by his superior, defendant's foreman, Ryan, and while bending over, in the act of lifting a piece of material, was struck on the head by a brick which fell from above. There was evidence justifying a finding that objects frequently fell or were thrown down this shaft, and that to Ryan's knowledge this condition had existed for some time before the day of the accident. In fact the situation and surroundings of this open shaft were obviously such as to suggest danger from falling objects to any one working in the shaft or upon the hoists. It is to be inferred that appellant itself recognized the prudence of covering such of the open spaces as it was possible, under the circumstances, to protect, namely, the spaces between the front edge of each platform and the edges of the several floors because some time prior to the accident the defendant had given instructions to that effect, which instructions had been obeyed so far as possible, but many of the planks used for the purpose had been taken away and used in building scaffolds. There was no direct evidence from whence came the brick which hit the deceased, or through what particular aperture or apertures it descended in the course of its fall, but at the time of the accident the other hoist was in use by the defendant to convey brick and cement to some of the upper floors, and was then at a point considerably above the hoist on which the deceased was working, from which fact alone the jury might have inferred that the brick fell from this other hoist.

Prior to the accident, the deceased was in good health. From the blow caused by the brick he suffered a compound fracture of the skull, for which a serious operation was performed, as the result of which a raw space was left, exposing the brain. The wound was still open and discharging when he left the hospital, to which for a considerable time he was compelled to return daily for treatment. The wound continuing rebellious, shortly after January 31st a further operation was performed, but the wound refused to heal. About the 20th of March, his sputum was examined, and pulmonary tuberculosis was discovered, from which time the disease steadily progressed until the 28th of April, 1911, when the deceased died from pulmonary tuberculosis. One of the plaintiff's physicians testified that at the second operation the condition of some of the bone tissue of the skull was

such as to justify the suspicion that tuberculosis then existed at that point. Taken as a whole, the plaintiff's medical testimony was to the effect that the blow and the subsequent operation lowered the vitality of the deceased and decreased his powers of resistance so as to make him peculiarly susceptible to the tubercular germ, and that it was fairly to be inferred that the tuberculosis from which he died was the direct result of his injury.

[1] A notice under section 201 was duly served on the plaintiff's behalf. Defendant conceded such service, and takes no exception to the form of the notice. A copy was attached to the complaint, and the objection now urged is that because the notice was not formally offered in evidence, the action must fail. There is no force in this objection. Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Field v. Surpless, 83 App. Div. 268, 82 N. Y. Supp. 127. The defendant's opportunity to attack the sufficiency of the notice was as open as if it had been formally offered in evidence, and a failure so to offer it in no way militated against any of defendant's rights.

[2] The question whether death or injury from a secondary cause may or may not be the proximate result of the wrongful act complained of has been so often and so fully examined (Sallie v. N. Y. Railway Co., 110 App. Div. 665, 97 N. Y. Supp. 491; McCahill v. N. Y. Transportation Co., 201 N. Y. 221, 94 N. E. 616, Ann. Cas. 1912A, 961), that no further discussion of the authorities is necessary. We deem the evidence on this subject ample to sustain the verdict.

[3] On the trial the defendant's counsel urged that the measure of defendant's duty was reasonable care, and that if the hoist qua hoist was sufficient, the defendant performed its whole obligation, and was not called upon to furnish a hoist so covered or protected as to offer any degree of security from risks arising from extraneous conditions. The view of the learned trial justice was that it was for the jury to say whether the hoist was such as, under all the circumstances, afforded the deceased reasonable protection from objects falling from above, and that the employers' duty was not satisfied by the exercise of any degree of care less than such as offered such protection. We concur in this interpretation of the statute. The provisions of section 18 are very broad.

"A person employing or directing another to perform labor of any kind * * * shall not furnish or erect or cause to be furnished or erected for the performance of such labor, scaffolds, hoists, * * * or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

In connection with this must be read section 202, to the effect that the necessary risks assumed by the servant are only such as are "inherent in the nature of the business, which remain after the employer has exercised due care," and has complied with the law. Section 18 is part of a comprehensive scheme to improve the conditions under which labor is employed, and to afford workmen greater security from injury. The object of the statute, a purpose which, to my mind, its words amply support, was not merely to secure scaffolds, hoists, and

other "contrivances," which were in and of themselves safe and secure, but to enforce the furnishing by employers of implements or apparatus "so *constructed, placed* and *operated* as to give *proper protection*" under the particular conditions pertaining to their use. If they fail to come up to this standard, however excellent they may be in design, construction, or material, they are "unsafe," "unsuitable," and "improper," and not what the law contemplates and enjoins. True, the hoist in question was not primarily intended to carry human beings, but it was necessary for workmen, for the deceased at least, to go upon it in the performance of his duty, and thus to subject himself to dangers which were naturally to be apprehended in view of the conditions under which the hoist was maintained. Failure to so guard the hoist as to afford the deceased reasonable protection from such dangers was, to my mind, a failure to obey the statute.

We are cited to no case exactly in point, but in several cases under section 200 of the act a similar construction has been given to "plant," "ways," or "machinery," the safety of which has been tested, not by their own intrinsic sufficiency alone, but as well with reference to the conditions under which they were used. Sullivan v. Greenhut-Siegel Cooper Co., 155 App. Div. 391, 140 N. Y. Supp. 263; Lipstein v. Provident Loan Soc., 154 App. Div. 732, 139 N. Y. Supp. 799. A like interpretation has been given to the term "machinery" as used in the English Act. See Heske v. Samuelson, L. R. 12 Q. B. Div. 30, cited in the Sullivan Case, which involved facts very similar to the present; also Weblin v. Ballard, L. R. 17 Q. B. Div. 122. The measure of defendant's duty was not due care, for the statute cast upon the defendant the burden of compliance with its terms. As was said in Smith v. Variety Iron & Steel Works Co., 147 App. Div. 242, 244, 131 N. Y. Supp. 1033 (affirmed 208 N. Y. 543, 101 N. E. 709), a scaffold case, if section 18 enjoins no more than reasonable care on the part of the master, there was no reason for its enactment, for such was the common law. To the same effect are Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30; Armenti v. Brooklyn Union Gas Co., 157 App. Div. 276, 281, 282, 142 N. Y. Supp. 420, and other cases. Whether, under the circumstances, the hoist was safe was a question for the jury. Haggblad v. Brooklyn Heights Railroad Co., 117 App. Div. 838, 102 N. Y. Supp. 1039; Schmidt v. Rohn, 127 App. Div. 220, 110 N. Y. Supp. 1086.

The judgment should be affirmed, with costs.

SCOTT and DOWLING, JJ., concur.

CLARKE, J. (dissenting). Section 18 of the Labor Law provides that:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

The hoist under consideration in the case at bar was the ordinary hod hoist operated by engine and cable for the purpose of elevating materials in a building in process of construction. Similar hoists are in general use for such purposes in the city of New York, and the evidence is overwhelming that at the time of the occurrence complained of such hoists were not covered.

The interpretation of the provision of the statute made in the prevailing opinion, it seems to me, imports to it a meaning not in the contemplation of the Legislature at the time of the passing of the act, and to fall within the realm of legislation and not interpretation. It has been thoroughly established by a line of cases that the duty placed upon the master by said section is an absolute and personal duty that may not be delegated. But in each of the cases cited by the respondent there was a weakness or defect in the scaffold, hoist, ladder, or other mechanical contrivance, which defect was the direct cause of the accident complained of—the rope broke, the scaffold fell, or the contrivance gave way.

The interpretation now sought to be placed upon the act—that it is the absolute duty of the master to protect a workman upon any such contrivance from outside extraneous and independent injury—seems to me unwarranted. If the hod hoist must be inclosed or covered, then a scaffold or a ladder must be provided with the same protection, for a man working upon a scaffold or a ladder is equally exposed to the danger of being struck by a falling brick or other article in the course of the construction or repair of a building. Thus the employer would in fact become the insurer of his workmen's safety in connection with any such appliance, not only in respect to its own strength and safety, but from outside danger. It may well be that such a law would be desirable, and that the mere fact of injury in an employment should entitle the employé to compensation. This doctrine must be announced by the people and the Legislature, and not by the courts, whose duty it is to decide what the law is and not what it ought to be.

The learned court charged the jury:

"That there is no evidence in this case that the fall of the brick was due to the negligent act of the defendant or any of the defendant's servants, and you may not base any verdict upon any assumed negligence in so far as the dropping of the brick is concerned."

But he refused to charge:

"If the jury does not believe that on or before the 14th day of November, 1910, it was the general custom and usage to cover hod hoists of this character, then the jury can attack the existence of any negligence on the part of this defendant in not covering these hod hoists."

He also refused to charge:

"There being no statutory duty on the part of the defendant to place a guard or cover over this hoist or a partition between the hoists, then the burden of showing the practicability of placing a guard over or partition over or between the hoists is on the plaintiff."

The case was tried and submitted to the jury upon the theory that the law required the hod hoist to be covered.

In my opinion the statute was erroneously construed, and the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

INGRAHAM, P. J., concurs.