In the Matter of the Claim of JESSE M. NICHOLS, Deceased, et al., Respondents, against COLONIAL BEACON OIL COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, July 8, 1954.

*Thomas H. Fogarty* for appellants.

*Paul F. Eaton* for claimants-respondents.

*John M. Cullen* for Special Funds Conservation Committee.

*Nathaniel L. Goldstein, Attorney-General* (*Harry Pastor* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

IMRIE, J.   Decedent, Jesse M. Nichols, was employed by Colonial Beacon Oil Company from May 1, 1938, until his death on April 5, 1946, as a truck driver distributing petroleum products. His work included loading and unloading trucks and tank trucks and lifting cans containing bulk products weighing from sixty-five to seventy-five pounds.   He had worked in a similar capacity for one Kellam, of Hancock, New York, from 1933, until Kellam sold his business to this employer in 1938.

On February 28, 1946, decedent injured his thumb.   That injury is not controverted and, per se, has little relevancy here except as the agent setting up an unusual chain reaction.   Knowing of the injury, employer's plant supervisor asked Dr. Farrell, employer's examining physician, for a complete physical examination in order to determine whether decedent's inefficient performance of duties resulted from a physical condition, advising the doctor that Nichols had not had a routine examination for a long time.   On March 6, 1946, the doctor found and reported to the employer the existence of a bilateral hernia.   He received a history of the hernia development seven or eight years previously while decedent was lifting a tank from the ground.   Decedent told him that he then felt an acute pain in his right groin and noticed a bump there and that there was some pain on his left side but no bunch there noted.   The incident was not reported to the company or to decedent's coworker on that job.   When the doctor examined him, he was wearing a truss, which the doctor said did not hold well.   An operation was advised, which was performed March 23, 1946.   The operation was described as " successful " but decedent died April 5, 1946.   The cause of death was certified as delirium tremens.

On March 8, 1946, employer filed a report of the thumb injury and another with respect to the double hernia.   Decedent filed a claim for the thumb injury March 18, 1946.   On May 2, 1946, the widow filed a claim for death benefits setting up the bilateral hernia and two accidents, " approximately 1940 " and " In summer of 1945," stating accident " occurred lifting equipment and oil drums ".   On its own motion the Workmen's Compensation Board opened separately numbered files for the thumb injury, herniae, and death claim.   Subsequent proceed-

ings involved many hearings and various decisions by referees and the board, which need not be treated here in detail.

On November 22, 1950, a board decision established occupational disease, causal relationship and notice, and made an award in the thumb case, reversing a referee's decision therein of December 15, 1949. The referee's disallowance of the herniae case on the ground of no proper notice and no timely filing of claim was affirmed. The referee's decision disallowing the death claim was reversed and that case restored to the calendar for further development of the record. The memorandum of decision recited that there was evidence of sufficient probative strength to establish that the nature of claimant's work exercised a heavy strain upon a weakened abdominal wall and was the causative factor of his disabling condition, which warranted the finding of an occupational disease resulting in a causally related total disability from March 22, 1946, to the date of death. It was held that employer was not prejudiced by failure to give statutory notice and that advanced payment of compensation had been made to the date of death.

Appellants' first notice of appeal was then filed. In a memorandum of April 12, 1951, adverting to such appeal, the board restored the death claim to the referee's trial calendar for further development of the record and production of further medical proof on the issue of causal relationship last mentioned, directing the referee to decide *de novo* on completion of the record.

After further medical testimony the referee made a decision November 28, 1951, in which he found death to be the direct result of preoperative and postoperative treatment necessarily administered in attempting to cure an established and causally related occupational disease. Appellants contend that they had no notice of this decision. They had knowledge of it later and prior to the time of taking their second appeal.

A board decision of July 21, 1952, reviewed the several cases. Among other things, it affirmed the disallowance of the herniae case and affirmed the decision restoring the death case to the referee's calendar. It directed that a new folder should be assembled with reference to the finding of an occupational disease hernia, to be made a part of the record in the death case folder, and that case again restored to the referee's calendar for final determination *de novo*. The carrier was required to and did file a C-2 for the new folder.

At the last hearing on October 15, 1952, the referee made a decision and award *de novo* incorporating therein his previous decision of November 28, 1951, and again closed the death case. By decision of November 3, 1952, findings and award made in the decision of November 22, 1950, in the occupational hernia claim were incorporated and made a part of the record in the newly assembled case folder as well as the evidence of record on which said findings and award were based. On November 21, 1952, employer and its insurance carrier appealed to this court from all decisions and awards of the referee and board subsequent to the referee's decision of December 15, 1949.

Appellants contend that the death claim should be dismissed because (1) decedent had a hernia at least five years before his employment by this employer and, on the most favorable inference to be drawn, the second one was sustained in 1941, with no proof of aggravation by later work, (2) no notice of injury having been given employer and no claim having been filed, the board has improperly substituted a claim for death based upon occupational disease in place of one based upon accident, (3) there was no causal relationship between death by delirium tremens and the employment, and (4) no advance payment of compensation was made.

1. Apparently decedent had a left hernia at the time of his marriage in 1933. He then wore a truss and continued to do so until the time he underwent a required physical examination prior to his employment by Colonial Beacon. Yet the medical report of that examination read, "Hernia—none." The widow testified that late in 1941 decedent told her he had hurt his side while removing a tank from the ground, that he was having trouble, and that he would have to resume wearing the truss. He did so for the rest of his life. In the late spring or summer of 1945 he told her he anticipated trouble on his right side. She examined him and felt a bunch on the right groin. Subsequently he said he thought he would need an operation and was afraid he could not continue his work because he had hurt his side and back handling a twenty-five pound keg of oil.

In his testimony Dr. Farrell found a causal connection between the hernia found by him and the lifting of the tank, stating that lifting causing hernia on the right side could also have then so weakened the left side as to cause that hernia to come down later. He also testified that, assuming the existence of bilateral hernia in 1941, the lifting of cans weighing between sixty-five and seventy-five pounds would be a competent producing cause

for the aggravation of the hernia which had not come down. His observation that decedent's truss was not holding as well as it used to also evidenced an aggravation. While it has been said that an inference may reasonably be drawn without medical testimony that a series of strains and twists would aggravate a double inguinal hernia (*Harrington's Case,* 285 Mass. 69), here the testimony of Dr. Farrell was implicit with the thought that the character of decedent's work aggravated his hernia condition after 1941.

2. The date of disablement is such date as the board may determine on the hearing of the claim and the fixing of March 22, 1946, when decedent entered the hospital for his operation, is, in contemplation of the statute, treated as the happening of an accident. (Workmen's Compensation Law, §§ 38, 42.) The employer had knowledge of the hernia condition on March 6, 1946. The death claim was filed within thirty days of death and within ninety days after the date of disablement as found by the board. The board was not barred from finding death due to an occupational disease by reason of the filing of a death claim predicated on accident. In evaluating the substantial rights of the parties the board is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure. (Workmen's Compensation Law, § 118.) A petition for death benefits based on an allegation of death due to hernia was held to support an award based on death due to heart failure. (*Matter of Ruso* v. *Beverwyck Breweries,* 276 App. Div. 878.)

3. Substantial medical testimony by a neuropsychologist of twenty-five years' practice related the delirium tremens to the hernia operation. Dr. Young examined decedent on the day before his death, diagnosing his condition as postoperative delirium due probably to taking some form of drug, medicine or alcohol. Decedent had had delirium tremens on at least four previous occasions, the last about a year before his death. In the opinion of the physician the hospital record indicated the administration of sedatives much in excess of those ordinarily necessary in postoperative bilateral hernia surgery, given in the effort to counteract the delirium following the operation. Whiskey was included in that medication. With reference to the history of previous attacks of delirium tremens, the doctor said, '' The administration of the sedatives necessary to quiet this man following his surgery and the effects of the surgery in my opinion released the symptoms which I have described as delirium tremens.'' Though the connection between the hernia operation

and delirium tremens may appear bizarre, it is recognized that a negligent act may be a proximate cause when it has set in motion a sequence of events resulting in a hastened and premature death from delirium tremens. (*McCahill* v. *New York Transp. Co.*, 201 N. Y. 221.)

4. The payments shown to have been made by employer to decedent are contended to have been made from the company's disability and death benefit plan. It does not appear that decedent was given any notification that the payments were different from other salary payments. Tax deduction was made from the payments until March 31, 1946, but not from that of April 1st to April 5th of that year. The board properly found that the payments until March 31st, at least, were in the nature of advanced payment of compensation.

The decisions and awards should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Decisions and awards affirmed, with costs to the Workmen's Compensation Board.