Cynthia STEINHAUSER, an infant, by Carl P. Steinhauser, her guardian ad litem, and Carl P. Steinhauser, individually, Plaintiffs-Appellants,

v.

The HERTZ CORPORATION, a corporation of the State of Delaware authorized to do business in New York, and Louis J. Ponzini, Defendants-Appellees.

No. 381, Docket 33946.

United States Court of Appeals, Second Circuit.

Submitted Dec. 18, 1969.

Decided Jan. 26, 1970.

**1170**

Benjamin H. Siff, New York City (A. Robert Lieberman, New York City, of counsel), for plaintiffs-appellants.

Benjamin Heller, New York City (Cymrot, Wolin & Simon, New York City, of counsel), for defendants-appellees.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

On September 4, 1964, plaintiff Cynthia Steinhauser, a New Jersey citizen then 14 years old, her mother and father were driving south through Essex County, N. Y. A northbound car, owned by defendant Hertz Corporation, a Delaware corporation authorized to do business in New York, and operated by defendant Ponzini, a citizen of New York, crossed over a double yellow line in the highway into the southbound lane and struck the Steinhauser car heavily on the left side. The occupants did not suffer any bodily injuries.

The plaintiffs' evidence was that within a few minutes after the accident Cynthia began to behave in an unusual way. Her parents observed her to be "glassy-eyed," "upset," "highly agitated," "nervous" and "disturbed." When Ponzini came toward the Steinhauser car, she jumped up and down and made menacing gestures until restrained by her father. On the way home she complained of a headache and became uncommunicative. In the following days things went steadily worse. Cynthia thought that she was being attacked and that knives, guns and bullets were coming through the windows. She was hostile toward her parents and assaulted them; becoming depressed, she attempted suicide.

The family physician recommended hospitalization. After observation and treatment in three hospitals, with a final diagnosis of "schizophrenic reaction —acute—undifferentiated," she was released in December 1964 under the care of a psychiatrist, Dr. Royce, which continued until September 1966. His diagnosis, both at the beginning and at the end, was of a chronic schizophrenic reaction; he explained that by "chronic" he meant that Cynthia was not brought to him because of a sudden onset of symptoms. She then entered the Hospital of the University of Pennsylvania and, one month later, transferred to the Institute of Pennsylvania Hospital for long-term therapy. Discharged in January 1968, she has required the care of a psychiatrist. The evidence was that the need for this will continue, that reinstitutionalization is likely, and that her prognosis is bad.

As the recital makes evident, the important issue was the existence of a causal relationship between the rather slight accident and Cynthia's undoubtedly serious ailment.[1] The testimony was

---

1. The fact that no physical harm was suffered as a result of the accident does not affect plaintiff's right to recover. New York has abandoned the rule disallowing recovery for mental disturbance in the absence of a physical impact, see Battalla v. State, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961), and although some courts deny recovery for mental disturbance unaccompanied by physical injuries, see Prosser, Torts 348–49 (3d ed. 1964) ; A.L.I. Restatement 2d Torts § 436A, New York allows such recovery if the "mental injury [is] marked by definite physical symptoms, which are capable of clear medical proof," Ferrara v. Galluchio, 5 N.Y.2d 16, 176 N.Y.S.2d 996, 152 N.E.2d 249 (1958), quoting Prosser, Torts 212 (1st ed. 1941); see also Battalla v. State, supra, and "A. A." v. State, 43 Misc.2d 1004, 252 N.Y.S.2d 800 (Ct.Cl. 1964) (awarding damages where slight physical impact "aggravated and exacerbated that pre-existing condition" to produce schizophrenia).

uncontradicted that prior to the accident she had never displayed such exaggerated symptoms as thereafter. However, she had fallen from a horse about two years earlier and suffered what was diagnosed as a minor concussion; she was not hospitalized but missed a month of school. The other evidence relied on by the defendants to show prior psychiatric abnormality was derived largely from the history furnished, apparently in large part by Cynthia, at her admission to the first of the three hospitals on September 20, 1964, which we set out in the margin.[2]

Dr. Royce testified that a person may have a predisposition to schizophrenia which, however, requires a "precipitating factor" to produce an outbreak. As a result of long observation he believed this to have been Cynthia's case—that "she was a rather sensitive child and frequently exaggerated things and distorted things that happened within the family" but that the accident was "the precipitating cause" of her serious mental illness. Under cross-examination he stated that prior to the accident Cynthia had a "prepsychotic" personality but might have been able to lead a normal life. Dr. Stevens, attending psychiatrist at the Institute of Pennsylvania Hospital, who had treated Cynthia, in answer to a hypothetical question which included the incidents relied on by the defendants to show prior abnormality, was of the opinion that the accident "was the precipitating cause of the overt psychotic reaction," "the last straw that breaks the camel's back."[3] In contrast defendants' expert, Dr. Brock, while agreeing that "with a background of fertile soil" schizophrenia can be induced by emotional strain, was of the opinion, based largely on the matters recited in footnote 2, that Cynthia was already schizophrenic at the time of the accident.

At the conclusion of the evidence the judge remarked to counsel, outside the presence of the jury, that, as he saw it, the sole question in the case was whether plaintiff had established that defendants caused Cynthia's condition or aggravated a pre-existing one. Even though plaintiffs' experts had testified in terms of precipitating rather than aggravating, it may be that if matters had been left right there, the jury would have understood. However, defendants' counsel, after correctly noting that "the question is not aggravate but precipitate," went on to say that, while that had been his understanding of plaintiffs' theory as outlined in counsel's opening statement, he now understood plaintiffs to be taking the position that the accident "caused schizophrenia." Taking this up, the judge asked plaintiffs' counsel, "Isn't it your position that this child was perfectly normal before this accident and that this accident caused schizophrenia?" When counsel responded that "this child was a fairly normal child, your Honor, and—" the judge demanded a direct answer whether it was

2. She was a normal child except one incident when at the age of nine one of the friends of her uncle molested her three times. Two years before while in camp she fell down from a horse. There she liked one horse called Silverfox, which she wanted to buy and felt much attached to him. Against her wishes, she saw that horse sold to another party. She felt depressed. Food seemed the only answer. She ate and felt better. As a result of it she became fat and felt further depressed. Later on she felt attached to a Riviera automobile but the family bought a Cadillac, which she hated very much. "Horses go away, car goes away but food never does." One year before she got involved with "hoods." They were fast and did everything—also in quotes. Quote, I felt much better among them. I wished to be liked and did everything to please them, unquote.

There was evidence that in fact the first incident was exposure by the brother of an uncle rather than molestation.

3. Plaintiff's medical testimony was introduced over repeated objections by defendants' counsel, far too many of which were sustained. Trial judges should not prevent doctors from using the method of expression normal in their profession and insist on their talking like lawyers.

plaintiffs' position that Cynthia "did not have schizophrenia before this accident." After counsel, not unnaturally, had responded in the affirmative, the judge said he would put the case to the jury on the basis of proximate cause. Further efforts by counsel to explain that his theory was one of "precipitating cause of a quiescent disease" proved unavailing; the judge insisted that he choose between saying "that this plaintiff was perfectly normal and that she got this schizophrenia as a result of the accident" or admitting "that she had schizophrenia before this accident, and that this accident only aggravated a pre-existing condition. There is no in-between position." Counsel remarked that there were "a host of other positions" between Cynthia's being "the most perfect child" or being schizophrenic before the accident, but the judge was not persuaded. When trial counsel again referred to "precipitating cause," the judge asked for supporting authority. Counsel cited, of all cases, Palsgraf v. Long Island R. R., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928)!

The charge followed the black-and-white pattern prefigured in the colloquy. The judge said the plaintiffs claimed the accident caused the schizophrenia whereas defendants contended "that this plaintiff has had this disease all along." Defendant was not liable unless it "proximately caused" the disease. "Proximately * * * is just a big word for. what people use for cause." If there was a "logical relationship" between the accident and plaintiffs' "psychotic injuries," defendants were responsible. But "if the child had this condition or disease all along and this defendant did not cause it," the defendants were not liable. Damages could be awarded only if the accident caused the schizophrenic condition but not if Cynthia "already had the disease."

After several hours of deliberation the jury propounded the following question:

If we find the auto accident was the precipitating factor, but not the cause

of the illness (schizophrenia) must we find for the plaintiff?

The judge responded by rereading what he had already said on proximate cause. Ten minutes later the jury brought in a defendants' verdict.

█ It is plain enough that plaintiffs were deprived of a fair opportunity to have the jury consider the case on the basis of the medical evidence they had adduced. The testimony was that before the accident Cynthia was *neither* a "perfectly normal child" *nor* a schizophrenic, but a child with some degree of pathology which was activated into schizophrenia by an emotional trauma although it otherwise might not have blossomed. Whatever the medical soundness of this theory may or may not be, and there does not seem in fact to have been any dispute about it, see Guttmacher and Weihofen, Psychiatry and the Law 43–55 (1952), plaintiffs were entitled to have it fairly weighed by the jury. They could not properly be pinioned on the dilemma of having either to admit that Cynthia was already suffering from active schizophrenia or to assert that she was wholly without psychotic tendencies. The jury's question showed how well they had perceived the true issue. When they were told in effect that plaintiffs could recover only if, contrary to ordinary experience, the accident alone produced the schizophrenia, the result was predestined.

█ It is unnecessary to engage in exhaustive citation of authority sustaining the legal validity of plaintiffs' theory of the case. Since New York law governs, the oft-cited decision in McCahill v. New York Transportation Co., 201 N.Y. 221, 94 N.E. 616, 48 L.R.A.,N. S. 131 (1911), which plaintiffs' appellate counsel has discovered, would alone suffice. There the defendant's taxicab negligently hit McCahill, broke his thigh and injured his knee. After being hospitalized, he died two days later of delirium tremens. A physician testified that "the injury precipitated his attack of delirium tremens, and understand I mean

precipitated not induced"; he explained that by "precipitated," he meant "hurried up,"—just what plaintiffs' experts testified to be the role of the accident here. The Court of Appeals allowed recovery for wrongful death. In Champlin Refining Co. v. Thomas, 93 F.2d 133, 136 (10 Cir. 1937), the court held that "where one who has tubercular germs in his system suffers injuries due to the negligence of another, and the injuries so weaken the resistance of the tissues that as a direct consequence tubercular infection sets up therein, the negligence is the proximate cause of the tubercular infection and renders the negligent person liable in damages therefor." There was no suggestion that plaintiff was required either to admit that he already "had" tuberculosis or to assert that the accident "caused" the development of the germs. Accord, Hazelwood v. Hodge, 357 S.W.2d 711 (Ky.1961). In Pigney v. Pointer's Transport Services, Ltd., [1957] 1 W.L.R. 1121, recovery for wrongful death was allowed where head injuries induced an anxiety neurosis leading to suicide. Our own decision in Evans v. S. J. Groves & Sons Co., 315 F.2d 335, 346–349 (1963) [thrombosis of sinus possibly due in part to ear disease but "triggered" by blow to head] is also quite relevant. If more were needed, the New York Court of Claims decision in "A. A." v. State, *supra,* note 1, seems directly on point. For further discussion of this familiar tort doctrine,[4] see A.L.I. Restatement of Torts 2d § 461; Prosser, Torts 300–301 (3d ed. 1964); 2 Harper & James, The Law of Torts 1127–28 (1956); Hart and Honoré Causation in the Law 160–62 (1959); Keeton, Legal Cause in the Law of Torts 67–69 (1963).

■■ Defendants argue that, however all this may be, plaintiffs cannot be heard to complain because of the failure of their counsel to except to the charge and his statement that he had no objection to the judge's handling of the jury's question. This forgets that the purpose of the rule requiring objections is to prevent reversals and consequent new trials because of errors the judge might well have corrected if the point had been brought to his attention. Here counsel had made his position abundantly clear not only in the colloquy we have cited but also in one of his requests to charge, and it was plain that further efforts would be unavailing. See Keen v. Overseas Tankship Corp., 194 F.2d 515 (2 Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952). Indeed the judge had warned plaintiffs' attorney not to take exceptions, which F.R.Civ.P. 46 makes unnecessary. In saying this we do not mean to excuse trial counsel for his apparent lack of acquaintance with the relevant authorities and his consequent failure to give the court the full assistance it deserved.

■ We add a further word that may be of importance on a new trial. Although the fact that Cynthia had latent psychotic tendencies would not defeat recovery if the accident was a precipitating cause of schizophrenia, this may have a significant bearing on the amount of damages. The defendants are entitled to explore the probability that the child might have developed schizophrenia in any event. While the evidence does not demonstrate that Cynthia already had the disease, it does suggest that she was a good prospect. Judge Hiscock said in *McCahill,* "it is easily seen that the probability of later death from existing causes for which a defendant was not responsible would probably be an important element in fixing damages, but it is not a defense." 201 N.Y. at 224, 94 N.E. at 617. In Evans v. S. J. Groves & Sons Company, *supra,* we noted that if a defendant "succeeds in establishing that the plaintiff's pre-existing condition was bound to worsen * * an appropriate discount should be made for the damages that would have been suffered even in the absence of the

---

4. The seeming severity of this doctrine is mitigated by the prevalence of liability insurance which spreads the risks.

**1174**

defendant's negligence." 315 F.2d at 347–348. See also the famous case of Dillon v. Twin State Gas & Electric Co., 85 N.H. 449, 163 A. 111 (1932), and 2 Harper & James, *supra*, at 1128–1131. It is no answer that exact prediction of Cynthia's future apart from the accident is difficult or even impossible. However taxing such a problem may be for men who have devoted their lives to psychiatry, it is one for which a jury is ideally suited.

Reversed for a new trial.