ATMORE H. LANG, as Administrator de Bonis Non of SADIE LANG, Deceased, Respondent, Appellant, *v.* STADIUM PURCHASING CORPORATION, Respondent, Impleaded with THIRD AVENUE AND 119TH STREET STADIUM CORPORATION, Appellant.

First Department, April 30, 1926.

**Theatres and shows — action against owner and lessee of motion picture theatre to recover for death of plaintiff's intestate who stumbled over projecting step in transverse passageway and suffered injuries from which she died — passageway was very dimly lighted and there was small light under step — no change in construction or lighting arrangements after lease made — error to dismiss complaint as to owner — intestate was suffering from diabetes at time of accident — injury to leg developed diabetic gangrene from which she died — recovery may be had for death.**

In an action to recover for the death of plaintiff's intestate brought against the owner and the lessee of a motion picture theatre, in which it appears that the plaintiff's intestate stumbled over a projecting step in a transverse passageway within the theatre, that the passageway was very dimly lighted, and that the projecting step was lighted only by a very small bulb under the step which did not show the projection, it was error to dismiss the complaint as to the owner of the theatre, since it appears that no change was made in the construction of the theatre or in the lighting arrangements after the lease was executed.

At the time of the accident, plaintiff's intestate was suffering from diabetes, and the injury to her leg suffered at that time almost immediately developed diabetic gangrene from which the plaintiff's intestate died about one month after the accident. It was shown that the plaintiff's death was the direct result of the injuries suffered in falling across the step and recovery may be had therefor.

APPEAL by the defendant, Third Avenue and 119th Street Stadium Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of April, 1925, upon the verdict of a jury for $5,000.

Appeal by the plaintiff, Atmore H. Lang, as administrator *de bonis non,* from an order entered in said clerk's office on the 18th day of April, 1925, directing a dismissal of the complaint as to the

Stadium Purchasing Corporation at the close of the plaintiff's case, and also from so much of said judgment as dismisses the complaint against said defendant.

*Evans, Hunt, Rees & Gillen* [*Theodore H. Lord* of counsel], for the appellant Third Avenue and 119th Street Stadium Corporation.

*Anderson, Phillips & Moss* [*Harry G. Anderson* of counsel; *Nathaniel Phillips* with him on the brief], for the plaintiff.

*Simon S. Hamburger*, for the respondent Stadium Purchasing Corporation.

MARTIN, J. The death of plaintiff's wife is alleged to have resulted from an accident which occurred in the Stadium Theatre, a moving picture house located at One Hundred and Nineteenth street and Third avenue, borough of Manhattan. The theatre was constructed and is owned by the defendant Stadium Purchasing Corporation, and was operated by the said corporation from October 1 to October 18, 1921. On the latter date it executed a lease of the theatre to the Third Avenue and 119th Street Stadium Corporation for a period of ten years. Since that time the premises have been managed and operated by the defendant Third Avenue and 119th Street Stadium Corporation, and were so managed and operated at the time of the accident.

After completion of the premises there was no change in construction or in the lighting arrangements. The theatre was divided into two sections, an " orchestra " section in front, to the rear of which there is a raised part referred to as the " stadium " section. Between the two there was a transverse passageway. The passageway was used by persons going to and from the seats in both the " orchestra " and the " stadium " sections of the theatre. Patrons were also permitted to stand in the passageway while waiting for seats which passageway is five feet wide. The stadium section is divided into three parts by means of two flights of steps, the entire lowest step in each instance projecting into the passageway. The projecting steps are each three feet ten inches long, seven and one-half inches high, and each extends into the passageway for a distance of eleven inches. Plaintiff's intestate fell over this unguarded obstruction, asserted to be faulty in design, considering the place and its use.

There was testimony to show that the passageway, at the point where the lowest step projected into it, was not sufficiently lighted, and that no other provision was made to warn those compelled to pass in virtual darkness, of the presence of a dangerous obstruction. The witnesses for the plaintiff testified that there was " a little dim light in the front of the step, showing the aisle down to the orchestra,"

that " the isinglass in front of that step was very  *  *  *  dirty, and it must have been a very small bulb  *  *  *." This lamp in the step threw its light for a few inches toward the orchestra aisle directly in front of the step, but it did not illuminate it from the side. Other than the light in the front of the step referred to, the nearest illumination was on the side walls of the theatre, where there were two small lamps on brackets. But the front of these was obstructed by a decorative shade which was almost opaque.

On the evening of October 6, 1922, plaintiff's intestate, with her husband and their children, went to the theatre to see a motion picture. No seats being available, they remained standing at the right side of the passageway, facing the front of the theatre, behind other patrons who were also waiting for seats. After waiting for a time, they heard a voice from the left, apparently that of an usher, calling out " two," signifying to them that there were two seats which had been vacated. Accordingly, they walked along the passageway toward the left side of the theatre. While doing so, plaintiff's intestate came into contact with the side of the projecting step, an obstruction in the passageway, and fell over it.

At the time she had been a sufferer from diabetes, but her condition appeared to be improving. Immediately after falling she was seen rubbing her hand against her left leg, and the next morning she complained of pain. On the following morning she called her husband's attention to a cut on the front of her leg a few inches above the ankle. Thereafter a severe swelling set in and a physician was called. Her condition grew steadily worse. Diabetic gangrene had resulted from the injury, and she was taken to the Post-Graduate Hospital for surgical treatment, where, in an effort to save her life, the leg was amputated below the knee. As this did not arrest the infection, it was found necessary to amputate the leg above the knee. The following day, November 7, 1922, she went into a diabetic coma and died a few hours later.

At the close of the plaintiff's case, the trial court granted a motion of the defendant Stadium Purchasing Corporation, the owner of the property, to dismiss the complaint as to said defendant, plaintiff's counsel excepting. A similar motion made by the defendant Third Avenue and 119th Street Stadium Corporation, the lessee, was denied and an exception taken. Thereupon the lessee proceeded with its defense. Against it the jury rendered a verdict for plaintiff.

It could have been very readily determined by the jury that the permanent arrangement and construction of the theatre were faulty for the reason that the step should have been either guarded

or set back so as not to be a dangerous obstruction in a place where people who might not be familiar with the conditions were compelled to walk in almost total darkness. It was customary during the time that the moving pictures were being shown to lower the lights, and it was the custom for employees in the theatre to locate seats for patrons throughout the performance, as some patrons went out and others waited to be seated.

We believe it was error to refuse to send the case to the jury against the landlord upon the question of faulty construction.

In *Junkermann* v. *Tilyou Realty Co.* (213 N. Y. 404) the court (at p. 408) said: " We may say that those who enter a structure designed for public amusement are there at the invitation, not only of the lessee who maintains it, but also of the lessor who has leased it for that purpose, and that the latter's liability is merely an instance of the general rule which charges an owner of property with a duty toward those whom he invites upon it."

In *Barrett* v. *Lake Ontario Beach Imp. Co.* (174 N. Y. 310) the court said: " The lessor of a structure rented for public use, which is either structurally defective or which does not afford what in the judgment of reasonable men would be a proper and adequate protection to persons using it, is guilty of negligence and responsible for an injury resulting to anyone by reason of its faulty construction."

The appellant lessee insists that the death of plaintiff's intestate was not the result of the injury sustained in falling across the step, when her leg was scraped and otherwise injured. It is conceded that the woman was in an advanced state of diabetes. The day following the accident her leg became discolored, and matters developed very seriously, as indicated above, until her death. The case of *McCahill* v. *N. Y. Transp. Co.* (201 N. Y. 221) is authority for a recovery in such a case.

The judgment entered on the verdict against the tenant should be affirmed, with costs, and the judgment dismissing the complaint against the landlord should be reversed and a new trial ordered, with costs to the plaintiff, appellant, to abide the event.

CLARKE, P. J., MERRELL and McAVOY, JJ., concur.

Judgment as to Third Avenue and 119th Street Stadium Corporation affirmed, with costs. Judgment and order dismissing complaint as to defendant Stadium Purchasing Corporation reversed and new trial ordered as to said defendant, with costs to plaintiff to abide the event.