ANTHIME DOWNING, PLAINTIFF-RESPONDENT, v. OX-WELD ACETYLENE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued May 2, 1933—Decided December 21, 1933.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the appellant, *Kellogg & Chance*.

For the respondent, *Edward G. Burke* (*Arthur F. Mead, of counsel*).

The opinion of the court was delivered by

HEHER, J. Respondent sued to recover damages sustained, it is said, as the result of the negligence of appellant, his employer, in failing to provide him with a reasonably safe place to work. The complaint, stating a cause of action under the common law, charged that respondent, whose work was the repairing and testing of blowpipes, suffered disease as the result of exposure to noxious gases, fumes and other injurious

matter. At the trial respondent claimed that his diseased condition was the result of carbon bisulphide and carbon monoxide poisoning. There was a verdict for respondent, and this appeal is from the judgment entered thereon.

Appellant's first point is that the trial judge erred (1) in denying its motion for a nonsuit, and (2) in refusing to direct a verdict for appellant.

It is insisted that there was no evidence of negligence on the part of appellant. We think there was. Respondent, in 1928, at the age of twenty-eight years, and apparently in good health, entered the employ of appellant, who was engaged in the manufacture of equipment and appliances for the use of acetylene. For a time respondent served in the capacity of a polisher, and later was assigned to the work of repairing and testing blowpipes. It was necessary to use acetylene in testing the appliances manufactured by appellant.

There was evidence tending to establish the following matters of fact: carbon bisulphide gas was present in the workroom to which respondent was assigned. There was some carbon monoxide also. These are poisonous gases. They were generated in the testing processes of appellant. The ventilation was inadequate to carry off these poisonous gases, and protect respondent from physical injury therefrom.

It is conceded that these are poisonous and extremely harmful gases "when present in the proper concentration." It is appellant's contention that these gases were not present in such concentration as to physically injure respondent. But there was evidence that respondent's physical condition was the result of carbon bisulphide and carbon monoxide poisoning. Moreover, one of appellant's experts agreed that while small quantities of these gases "in themselves are harmless, if repeated continuously," they "would cause damage."

There was ample evidence of a lack of proper ventilation. Appellant, apparently, conceived it to be its duty to ventilate the workroom. It is insisted that the fan installed was one of "a standard type used for certain classes of ventilation." But the evidence, particularly as to the movement of the

smoke. was sufficient to warrant an inference either that the ventilation was inadequate, or the fan was not in proper working order. One of appellant's experts stated that if the smoke rose to the ceiling and dropped again, as some of the witnesses said, the ventilation was "inferior." These motions were, therefore, properly denied.

In passing upon motions to nonsuit and for the direction of a verdict, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom. Where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. *Lipschitz* v. *New York and New Jersey Produce Corp.,* 111 *N. J. L.* 392.

It is next urged that the trial judge erred in refusing to nonsuit and direct a verdict for appellant on the ground that respondent had assumed the risk of the alleged injury. As was said by Chief Justice Gummere, in *Rogers* v. *Roe & Conover,* 74 *N. J. L.* 615: "It is not the obviousness of the physical situation or condition that charges the servant with the assumption of the risks which arise from it, but the obviousness of the dangers which the physical condition or situation produces." This distinction is made in a case relied upon by appellant, *Ducjack* v. *New Jersey Zinc Co.,* 104 *N. J. L.* 575. Mr. Justice Kalisch, speaking for the court of the last resort, said: "It goes without saying that there is no analogy between a case of a latent danger lurking in a mine from gases or other noxious or hurtful causes, of which a plaintiff had no notice or warning, and the situation which is presented here under the testimony in the cause." Tested by the rule thus laid down, this contention is without merit.

Appellant insists also that these motions should have been granted because there was no proof that plaintiff had contracted the disease alleged, or that the same was proximately caused by negligence on the part of appellant. We have

pointed out that there was sufficient evidence to warrant a finding that respondent suffered from the disease claimed, and that it was the proximate result of appellant's negligence. There being evidence tending to establish the foregoing, it follows that the motions for a nonsuit and a direction of a verdict, on this ground, were properly denied.

If an act of negligence be established, the proximate relationship between the negligence and the injury is ordinarily for the jury. *S. Kosson & Sons* v. *Union Building, &c., Co.,* 108 *N. J. L.* 111; *Smith* v. *Public Service Corp.,* 78 *Id.* 478.

Appellant argues that there were errors in the rulings on evidence. The grounds of appeal specified numerous rulings on evidence, which are claimed to be erroneous. Counsel for appellant, in the brief, states that the "fundamental difficulty in each instance was that the questions were predicated on assumptions not at the time nor thereafter established by the evidence." It is said that the vice of the questions objected to was the "unwarranted fundamental assumption that there was proof of the existence of carbon bisulphide or carbon monoxide at the place of work." As hereinbefore pointed out, there was evidence tending to establish the presence of these gases in the workroom to which respondent was assigned. This contention is therefore without substance. The plaintiff does not point out that these rulings were erroneous for any other reason, save as to questions put to the witnesses, Cheskin and Loehse. We find no harmful error in these rulings.

It is next urged that there were errors in the charge, and in the refusal to charge certain of appellant's requests. There was no error in the rulings complained of. As to the requests, it is sufficient to say that some embodied matters that were not applicable to the instant case, and that those properly requested were charged in substance. There is no merit in the claim that there were harmful errors in the charge.

Lastly, it is claimed that there was error in the refusal to nonsuit and direct a verdict, on the ground that there was no evidence "of anything to prevent the acceptance by the

plaintiff of section 2 of the Workmen's Compensation law from amounting to a surrender of all right by him to any other rights and remedies for occupational disease or injury other than those given by said section 2 of the Workmen's Compensation law."

The argument seems to be that respondent's remedy was exclusively under the Workmen's Compensation act. It is said that "there was applicable a legal presumption that the plaintiff had accepted section 2 of the Compensation law," and that no action at law lies for an alleged occupational disease not scheduled in the Workmen's Compensation act.

In *Smith* v. *International High, &c., Co.*, 98 *N. J. L.* 574, the Court of Errors and Appeals held that an injury such as this is not the result of an accident, and is not within the Workmen's Compensation act, and that the common law remedy is not affected by that act. The argument here is that because the legislature has undertaken to enumerate the occupational diseases that are compensable under the act, and declared noncompensable those not specified, "it excluded all non-scheduled occupational diseases from the realm of employer's liability, either for periodic payments or damages."

But we do not think so. Under the Workmen's Compensation act, as so amended, compensation in the case of an enumerated compensable occupational disease is made without regard to the negligence of the employer. It is not to be presumed that the legislature intended to deprive the injured workman of his common law remedy, in the event that he suffered, as a result of the negligence of his employer, an occupational disease not specified in the Compensation act. Such an intention must be expressed in clear and unequivocal language. The term "compensation" should not be construed to embrace damages recoverable for breach of a common law duty, unless that legislative purpose is indubitably expressed.

Judgment affirmed, with costs.