## GALEOTA v. UNITED STATES GYPSUM CO.

### No. 112.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1941.

948

Goodwin, Nixon, Hargrave, Middleton & Devans, of Rochester, N. Y. (W. Clyde O'Brien, of Rochester, N. Y., and Wendell J. Brown, of Chicago, Ill., of counsel), for appellant.

William L. Clay, of Rochester N. Y., for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff Galeota, an employee of the defendant,. United States Gypsum Company, brought this action to recover damages for injuries he claims to have suffered because the defendant neglected to provide him with a safe place to work, or to furnish him with devices that would prevent him from inhaling particles of silica from which he contracted silicosis. He sought to recover for negligence of the defendant in failing to observe its common law obligations and also in failing to observe certain provisions of the Labor Law of the State of New York, Consol.Laws, c. 31.

Section 200 of the Labor Law of the State provides: "General duty to protect health and safety of employees.—All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein. The board shall make rules to carry into effect the provisions of this section."

Section 417 of the Labor Law provides: "Ventilation.—An air current sufficient to remove smoke and noxious gases and to insure the safety of every employee shall be conducted along every passageway and working place."

Rule 557 of State Industrial Bulletin No. 12 reads as follows: "In any industry, trade or occupation or process involving the creation of silica dust, there shall be provided means for removing such dust at the point of origin or preventing same from being disseminated in the air breathed by employees in so far as it is practicable to do so."

The defendant evidently supposes that we are in a position to weigh the evidence and to reverse a judgment founded on a verdict against the weight of credible proof, but such is not the case in the United States Courts. We may only upset a verdict for failure of proof where the verdict is without substantial evidence to support it, as was not, in our opinion, the situation here.

The plaintiff's expert Jerome Cowan testified that: "Silicosis is a disease caused by the inhalation of silica or sand particles and is characterized by an absence of fever and decreased ability to work, and an increased susceptibility to tuberculosis, and certain characteristic X-ray changes." Cowan also testified that "the disease is incurable because of the chemical destruction of the lung tissue."

The plaintiff's proof of the defendant's negligence was limited by the New York Statute of Limitations (Civil Practice Act, Section 49) to a period of three years prior to the bringing of this action on August 18, 1933. In order to prevail, the plaintiff must show (1) that he had a condition of his lungs known as silicosis, and (2) that the condition was caused in whole or in part by negligence of the defendant occurring during the six months when he worked for the defendant in the years 1930, 1931 and 1933.

The plaintiff received a judgment for $8,305.08 in the court below from which the defendant now appeals. We hold that there was testimony from which the jury might lawfully find that the plaintiff con-

tracted silicosis and that the disease was due to the defendant's negligence during the six months mentioned. Accordingly the judgment should be affirmed.

The plaintiff testified that he first became dizzy and had sick spells during his employment and had to lay off work in 1930; that after going back to work he felt sick at night, coughed and had difficulty in breathing, felt a burning in his chest "like needles" and had to stop and rest. He added that his condition thereafter got worse. This his physicians attributed to silica particles which he had inhaled while working as a driller for the defendant. There was evidence that he worked in the defendant's gypsum mine at Oakfield, Genesee County, New York, from November 10, 1930, to February 28, 1931, and in its limestone quarry for about six and one-half weeks in 1931, and five days in 1933.

While working in the gypsum mine he used an electric drill on the soft gypsum and a jackhammer, operated by air pressure on the harder rock. In the gypsum mine there was a layer of limestone rock above the vein of gypsum sometimes known as roof or fire rock. In some places there was between the vein of gypsum and the roof rock a layer containing a mixture of limestone and gypsum called ash rock. The mine was developed by pushing forward entries or rooms to the left and right of the main passage. After extracting the vein of gypsum the roof of each entry is taken down for a width of nine feet so as to give clearance from the floor of seven feet and in this cleared entry to lay tracks and install overhead wiring for an electric motor road to make a haulageway for the removal of the gypsum. The plaintiff testified that he used an electric drill in working on the gypsum and a pneumatic jackhammer in dislodging roof and ash rock. The mine was so constructed that it could be ventilated by natural air currents and was equipped with a forced draft system whereby outside air was sucked into the mine by a fan located in a fan-house above ground.

The proof indicated that the gypsum rock contained only .3% of free silica, the limestone rock 2.4% free silica and 6.5% silicates, and the ash rock from 2.1 to 3.6% of the free silica and 36% of silicates. There also was testimony that an average of 66% of the free silica portion of the various samples was under 10 microns in size.

As we have said, the plaintiff's evidence indicated that when working in the mine he used an electric drill to remove the gypsum and a jackhammer to dislodge ash rock and roof rock. In each case dust was created. When using the jackhammer he said the dust was so thick that it looked like flour or smoke and a man could not be seen who was but three or four feet away. He testified that the places where he worked were sometimes so far from the fan that the condition of the air was bad and he got no ventilation. Moreover both he and some of his witnesses said that the fan was shut off at ten or half past ten o'clock in the morning so that during most of the working day it did not give the ventilation that should have been furnished. Likewise it ordinarily was not operated at night so that the day did not begin with a well ventilated mine. In addition to this, the jackhammers were not equipped with dust traps and when they were used to clean out holes that were being drilled the dust would come back into the places where men were working. No masks or respirators were furnished to the drillers.

When working in the limestone quarry the plaintiff used a jackhammer to bore holes in rock previously blasted so that it could be broken up for loading. In doing this it was necessary to bend over and lean on the drill, with the result that his mouth was only about two and one-half feet away from the drill hole. There would be dust in the hole which necessarily would be forced out by the drill and come all over the driller. The jackhammer had no dust trap to catch the dust, there was no suction device to suck it away and no mask or respirator for the workmen. The plaintiff said that four or five other drillers would be working at the same time as himself.

The defendant introduced evidence contradicting much of the plaintiff's proof. It was to the effect that drilling with a jackhammer was not done by the plaintiff, that the fan was operated at all times during working hours and that the places where he worked were properly ventilated and free from silica dust. In our opinion, these issues were for the jury and must be regarded as settled in plaintiff's favor by the verdict.

The defendant attacks the verdict mainly on the ground that there was no proof of the amount of free silica present in any dust which the plaintiff inhaled. In other

words, it is argued that the plaintiff did not support the burden of showing how much silica was in the air he breathed and whether it was dangerous in amount. But Dr. Cowan testified that there was an increased fibrosis shown in the X-ray photographs of the plaintiff's lungs, that their condition was abnormal and diseased, and in answer to a hypothetical question based on the plaintiff's evidence, said that the latter was suffering from silicosis produced by exposure to the conditions we have mentioned. The testimony of Dr. Laidlaw and Dr. Popoff was to the same effect. The testimony was, we think, sufficient to go to the jury and to justify the verdict for the plaintiff however we might have resolved the issues were we the fact finding body. There was proof that he was drilling in formations which contained substantial amounts of silica from which dust was created and not carried off, and there was also proof that a disease resulted having all the characteristics of silicosis. This was enough for submission to a jury of the cause of the disease. Its verdict concludes us. Pieczonka v. Pullman Co., 2 Cir., 102 F.2d 432; Jacque v. Locke Insulator Corp., 2 Cir., 70 F.2d 680; Downing v. Oxweld Acetylene Co., 112 N.J.L. 25, 169 A. 709; Bellows v. Merchants Despatch Trans. Co., 257 App.Div. 15, 12 N.Y.S.2d 655, affirmed 283 N.Y. 581, 27 N.E.2d 440.

■ The defendant contends that the plaintiff was barred from recovery by his own contributory negligence and by his assumption of risks inherent in his employment. There was nothing to show that the defendant instructed this employee that inhaling the dust would result in serious danger to him. This was its duty to a day laborer of no apparent education. Jacque v. Locke Insulator Corp., 2 Cir., 70 F.2d 680, 683. According to the plaintiff's witnesses there likewise was no showing that defendant furnished him with proper appliances to avoid exposure to silica dust or with a safe place to work. Neglect to perform these obligations precluded it from successfully maintaining the defense of assumption of risk. Gustav Pantzar v. Tilly Foster Iron Mining Co., 99 N.Y. 368, 2 N.E. 24; Dana, Adm'r v. New York Cent. & H. R. R. Co., 92 N.Y. 639. Whether the plaintiff was guilty of contributory negligence in continuing to work after the dust had once made him sick was a question for the jury. Bellows v. Merchants Despatch Trans. Co., 257 App.Div. 15, 12 N.Y.S.2d 655, affirmed 283 N.Y. 581, 27 N.E.2d 440. The plaintiff denied that he knew that the dust was dangerous or that his disabilities were due to inhaling it (Record, pp. 52, 75 and 76).

■ The trial court committed no error in admitting Rule 557 of State Industrial Bulletin No. 12. The rule became effective January 1, 1931, but the plaintiff was employed long after that date. The rule on its face was designed to provide safeguards against silica dust and was plainly applicable to just such a situation as the present. Schmidt v. Merchants Despatch Trans. Co., 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450.

■ It is contended that there was error in excluding proof offered by the defendant to show the cost per day of electricity necessary to operate the ventilator fan. Possibly this should have been admitted as indicating that the cost would have been so trifling as to render plaintiff's testimony that the fan was turned off every day at 10 a. m. improbable, at least as a business economy. But the evidential value of the proof was slight and its relation to the issue whether the fan operated during working hours so remote that we cannot regard its exclusion as substantially prejudicial.

Judgment affirmed.