## FRANCIS v. SEAS SHIPPING CO., Inc.

### No. 76, Docket 20345.

Circuit Court of Appeals, Second Circuit.

Dec. 16, 1946.

Frank V. Barns, of New York City, (Paul L. Murphy, of New York City, of counsel), for Seas Shipping Company, Inc., defendant-appellant.

Samuel M. Ostroff, of New York City, (Samuel M. Ostroff and Isaac M. Rothenberg, both of New York City, of counsel), for Warren C. Francis, plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In June 1942, the plaintiff signed articles as a petty officer messman on the Steamship Tuxford with the duty to serve five men and make up six bunks. He was also assigned as a loader of one of the guns on the port side forward, that is, to hand the shell to the man who was to put it in the breech. He was instructed to drop whatever he was doing and proceed to his gun position as best he could in case of an air raid alarm.

On the morning of August 6, while the ship was at Suez and Arab stevedores were unloading cargo and the plaintiff had completed his duties and gone to his bunk, an alert was sounded. He at once came out of his quarters and started to run to his gun position but found he could not do so because the passageway from his bunk to the gun position which was some 175 feet away was littered with planking, dunnage, a chain and some rope, strewed about in a disorderly fashion. Steel hatch covers also lay on the deck, not evenly on top of one another but at angles. As he proceeded he tripped over the dunnage and then slipped on hatch covers, fell down and injured his right ankle. When he picked himself up he again hit his ankle on one of the hatch covers which he had to climb over. Upon finally reaching his gun position he felt so much pain in his ankle that after 10 or 15 minutes he had to be replaced by another seaman. Returning to his bunk he found his ankle black and blue, scratched and swollen. He was told to soak his foot in Epsom Salts, the pharmacist's mate put a bandage on the ankle, and he was relieved from serving meals. During the remainder of the voyage he was relieved from the duty of making the bunks but his ankle pained him severely and the pharmacist's mate changed his bandage several times before the end of the voyage. When the vessel got back to New York on October 9, 1942, he was discharged from his work but was still wearing his bandage. On returning to his home in Massachusetts he continued the Epsom Salts treatment and on October 19, because the pain was still severe, went to the Boston Marine Hospital. His leg was blue and cold and in order to increase the circulation in his right leg and to relieve his pain an operation was performed at the hospital known as Sympathectomy that consisted of cutting certain nerves. In January 1943 he was discharged from the hospital but the pain and intermittent cramps continued and he had to use a cane to walk. On August 3, 1943 he was able again to ship as messman on another vessel but could not stand on the deck in rough weather as well as before his accident. Thereafter he filled certain other positions on vessels and on shore, but continued to have pain that limited his work and after December 1945 was obliged to stop working permanently.

Dr. Jenkins, who had operated on him in December 1942, testified that at the time of the operation he had Buerger's disease which is an inflammation of the arteries, veins and nerves of the extremities, for his statement in the hospital record showed that he had previous symptoms of intermittent claudication or tightness of the leg muscles—an accompaniment of that disease. He said that a trauma (such as the plaintiff received when he fell) might aggravate that disease. Dr. Wilensky, a specialist who examined the plaintiff in April 1946, also testified that he was suffering from Buerger's disease and said that a

rupture of blood vessels due to the accident would, in his opinion, aggravate and did aggravate that disease and that the condition he was in was permanent.

█ The trial judge left the jury to determine whether it was negligent on the part of the defendant, operating the Steamship Tuxford, to leave the deck floor cluttered with dunnage and other obstacles instead of cleaning them off, and whether if the jury found negligence it aggravated a preexisting Buerger's disease. In view of the likelihood in the year 1943 of air raids which made it necessary for the plaintiff to hasten to his gun station we cannot say that a jury could not properly find that the condition of the deck would imperil seamen who might be obliged to take sudden and hurried action. There was evidence that the passages which the plaintiff had to traverse in order to reach his station were clogged by large beams on which engines had rested that were unloaded from the vessel 13 days before the accident, as well as by easily removable dunnage and by hatch covers canted at an angle—instead of being piled evenly on one another. While there was some conflict in the evidence as to the condition · of the deck and as to how far it was reasonable to expect it to be cleared up while stevedoring work was still going on, the plaintiff was entitled to the most favorable inferences that the jury might draw and we have set forth the evidence in that light. Upon the record presented, we think that the jury might find that a dangerous condition existed which the master of the vessel could reasonably have obviated in the interest of the safety of the crew. The duty of the defendant to furnish the plaintiff with a safe place to work was non-delegable and the jury found was not fulfilled. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872.

█ The defendant criticizes the trial judge's ruling that the master had authority to keep passages on the ship clear during the loading and unloading of the vessel. The judge left to the jury the question whether the master should have exercised such authority under the circumstances. Whether or not the master had any authority over the stevedores is unim-

portant; he certainly had it over his crew and could direct them to clean up the deck in all proper ways. We see no error in the court's ruling. The fact that the cluttered condition of the deck was in part due to the acts of the stevedores in unloading would not relieve the shipowner from doing all that was reasonable to make safe the passages that members of the crew had to traverse in order to perform their duties. What ought to have been done under the particular circumstances was a matter properly submitted to the jury.

█ The defendant chiefly criticizes the trial court for allowing the jury to find that the plaintiff had Buerger's disease prior to the accident and that it was aggravated by the injury to his ankle which he received when he stumbled on the dunnage and slipped on the hatch covers. In the first place it is argued that an aggravation of Buerger's disease had not been pleaded as an item of damage. But that is unimportant, if, as was the fact, the claim was seasonably presented, evidence was introduced in support of it and no surprise occurred which deprived the defendant of a fair trial. That the plaintiff made such a claim was evident nearly six months before the date of the trial when the deposition of Dr. Feldman was taken on November 2, 1945. Not only was evidence in support of the claim given by Dr. Jenkins, Dr. Wilensky and Dr. Feldman but even defendant's expert Dr. Cooper admitted at one point in his testimony that "a blow or trauma" might aggravate Buerger's disease (fol. 324) though he said elsewhere that the history of the plaintiff's case as embodied in a hypothetical question showed that the disease was not aggravated by his accident.

█ The defendant makes further objection to the allowance of certain hypothetical questions by plaintiff's counsel which assumed that plaintiff was in good physical condition prior to the date of the accident. There was evidence however that the plaintiff was at that time able to do full work and that Buerger's disease even though then in his system was in a dormant condition and had not become active and troublesome. In this connection it must be remembered that plaintiff's claim

of damages in connection with Buerger's disease is that it was aggravated—not caused—by the accident. The only danger in allowing a hypothetical question that omits some item of proof that is relevant to the inquiry is that the omission may furnish a basis for an answer that will mislead a jury. But any ill effects due to such an omission will be cured by cross-examination of the experts to whom the hypothetical question is put and by argument showing that the answers to questions lacked a proper foundation in the evidence. The incompleteness of a hypothetical question rarely if ever affords ground for reversing a judgment and certainly did not do so here.

 The objection to the statement in the judge's charge that Buerger's disease was incurable seems to be supported by the testimony of the experts except Dr. Cooper who testified that cessation of smoking had in some cases caused pain and cramps to cease. But, in any case it was but a comment on the facts by the judge which, if incorrect, was cured by his later statement given after the objection to his comment was made in which he said that he was only "expressing an opinion" and that "the facts are entirely for the jury, and if the jury finds I have misstated them, they abide by their own recollections and should disregard what I have stated" (fols. 474-5).

It is unnecessary to discuss the objection raised to the size of the verdict. While it is claimed to have been excessive, the grounds for the claim are not very substantial. There was evidence of defendant's negligence and of injuries resulting therefrom, likewise evidence that the plaintiff suffered injuries in the course of his employment as a seaman and thereby became entitled to maintenance and cure. The question of the amount of damages was clearly for the jury. The verdict is not reviewable in the United States Courts on appeal in a case where there has not been any error of law in reaching the amount. If the amount was excessive the remedy of the defendant was by motion in the trial court. Southern Ry. Co. v. Bennett, 233 U.S. 80, 34 S.Ct. 566, 58 L.Ed. 860; Fairmount Glass Works v. Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439;

Searfoss v. Lehigh Valley R. Co., 2 Cir., 76 F.2d 762; Jacque v. Locke Insulator Corporation, 2 Cir., 70 F.2d 680, 683; Ford Motor Co. v. Hotel Woodward Co., 2 Cir., 271 F. 625, 630.

For the foregoing reasons the judgment is affirmed.